UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MOBILE MINI, INC., ERIK OLSSON, | : **SECURITIES EXCHANGE ACT OF** |
| FREDERICK G. MCNAMEE, JEFFREY S. | : **1934** |
| GOBLE, JAMES J. MARTELL, KIMBERLY | : |
| J. MCWATERS, LAWRENCE | : **JURY TRIAL DEMANDED** |
| TRACHTENBERG, MICHAEL L. WATTS, | : |
| SARA R. DIAL, STEPHEN A. MCCONNELL, | : |
| MICHAEL W. UPCHURCH, AND KELLY | : |
| WILLIAMS, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Mobile Mini, Inc. ("Mobile Mini or the "Company") and the members of Mobile Mini's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Mobile Mini and WillScot Corporation and its affiliates ("WillScot").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on April 17, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Picasso Merger Sub, Inc., a wholly-owned subsidiary of WillScot, will merge with and into Mobile Mini, with Mobile Mini surviving as a wholly-owned subsidiary of WillScot (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Mobile Mini stockholder will receive 2.4050 WillScot shares (the "Merger Consideration").

3. As discussed below, Defendants have asked Mobile Mini's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning, among other things, the analyses performed by the Company's financial advisors, Barclays Capital Inc. ("Barclays") and Goldman Sachs & Co. LLC ("Goldman Sachs," and together with Barclays, the "Financial Advisors"), in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Mobile Mini's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Mobile Mini is incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Mobile Mini stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Erik Olsson has served as a member of the Board since March 2013 and is the Non-Executive Chairman of the Board.

11. Individual Defendant Frederick G. McNamee has served as a member of the Board since June 2008.

12. Individual Defendant Jeffrey S. Goble has served as a member of the Board since February 2006.

13. Individual Defendant James J. Martell has served as a member of the Board since January 2010.

14. Individual Defendant Kimberly J. McWaters has served as a member of the Board since August 2014.

15. Individual Defendant Lawrence Trachtenberg has served as a member of the Board since 1995.

16. Individual Defendant Michael L. Watts has served as a member of the Board since 2002 and is the Lead Independent Director.

17. Individual Defendant Sara R. Dial has served as a member of the Board since August 2014.

18. Individual Defendant Stephen A. McConnell has served as a member of the Board since August 1998.

19. Individual Defendant Michael W. Upchurch has served as a member of the Board since February 2019.

20. Individual Defendant Kelly Williams has served as a member of the Board, President, and Chief Executive Officer since October 2019.

21. Defendant Mobile Mini a Delaware corporation and maintains its principal offices at 4646 E. Van Buren Street, Suite 400, Phoenix, Arizona 85008. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "MINI."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

24. Mobile Mini, together with its subsidiaries, provides portable storage and specialty containment solutions in the United States, the United Kingdom, and Canada. It operates through three segments: Storage Solutions North America, Storage Solutions United Kingdom, and Tank & Pump Solutions. The Company offers various portable storage and office products, including steel storage containers and steel ground level offices to construction companies, retailers, medical centers, schools, utilities, distributors, military, hotels, restaurants, entertainment complexes, and households for various applications, such as storage of construction materials and equipment, retail and manufacturing inventory, documents and records, and other goods. It also provides a range of specialty containment equipment, such as steel tanks, stainless steel tank trailers, and pumps and filtration equipment, as well as roll-off, vacuum, and dewatering boxes. In addition, the Company offers specialty containment services comprising transportation of containers for waste management; waste management oversight and services; system design services, including pumping assessment, filtration, and temporary storage; and field services to install and connect customer containment equipment. It primarily leases its specialty products for chemical, refinery, oil and natural gas drilling, mining, and environmental service customers. As of December 31, 2019, the Company operated a rental fleet of approximately 200,200 storage solution containers and units; and 12,700 units of tank and pump solutions. Its network also consisted of 120 storage solutions locations, 20 tank and pump solutions locations and 16 combined locations. Mobile Mini was founded in 1983 and is based in Phoenix, Arizona.

25. On March 2, 2020, the Company and WillScot jointly announced the Proposed Transaction:

BALTIMORE and PHOENIX, March 02, 2020 (GLOBE NEWSWIRE) -- WillScot Corporation (NASDAQ: WSC) ("WillScot") and Mobile Mini, Inc. (NASDAQ: MINI) today announced the companies have entered into a definitive merger agreement under which WillScot, a leading specialty rental services provider of innovative modular space and portable storage solutions across North America, will combine with Mobile Mini, a leading provider of portable storage solutions serving customers in the U.S., U.K., and Canada. Mobile Mini stockholders will receive 2.4050 shares of WillScot common stock for each share of Mobile Mini common stock in an all-stock merger of equals transaction.

The implied total enterprise value of the combined company is approximately $6.6 billion. Upon completion of the transaction, current WillScot and Mobile Mini stockholders will own 54% and 46% of the combined company, respectively. The transaction is expected to close in the third quarter of 2020.

This combination brings together WillScot's leading modular space capabilities with Mobile Mini's leading portable storage solutions. The combined company will benefit from complementary capabilities, a diverse customer base, a broad geographic footprint, increased scale, and multiple levers for growth driven by enhanced product and service offerings as well as significant cost savings.

Brad Soultz, President and Chief Executive Officer of WillScot, commented, "Today's announcement represents a milestone event for both WillScot and Mobile Mini. The combination of our two great companies creates a leading provider of modular space and portable storage solutions, with a broadened footprint and expanded fleet ideally positioned to benefit from the cross-selling of WillScot's Ready to Work solutions and Mobile Mini's managed services offerings. The combined company will benefit from diversified and predictable lease revenue streams, as well as a strong balance sheet and robust free cash flow[2] profile, facilitating further growth and enhancing our ability to generate superior returns for our stockholders. I am very excited to combine with Mobile Mini and could not be prouder of the WillScot team that made it possible."

Kelly Williams, President and Chief Executive Officer of Mobile Mini, said, "We are pleased to join forces with WillScot to offer customers the largest portfolio of modular space and portable storage solutions in North America. We look forward to working with the WillScot team to successfully integrate our great

businesses and deliver strong, predicable growth and profitability to stockholders over the long term, all while maintaining our commitment to our culture and focus on customer service."

**Compelling Strategic Rationale**

- Combines two iconic industry leaders – a leading provider of modular space solutions and a leading provider of portable storage solutions – with best-in class teams and proven track records of delivering profitable growth and stockholder value.
- Creates industry-leading specialty leasing platform with enhanced ability to serve customers through a combination of distinct but complementary portfolios with leading brands and broad geographic footprint.
- $50 million of anticipated annual cost synergies for this transaction with significant upside for incremental revenue synergies supported by cross-customer pull through, expansion of WillScot's value adding products and services offering across Mobile Mini's steel ground level offices, and expansion of Mobile Mini's managed services offering across WillScot's customer base.
- Strengthens combined customer valuation proposition across diverse end markets via pull through from modular to storage and vice versa.
- Significant capital allocation flexibility underpinned by an expected combined free cash flow2 of greater than $290 million and supported by a $2.9 billion NBV fleet generating predictable and strong recurring revenue with >30 months average lease duration and >20 years average useful asset life.
- Builds on WillScot's track record of successfully integrating the ModSpace, Tyson and Acton acquisitions, while driving over $70 million of annual cost synergies.

**Organizational Structure**

Following the close of the transaction, Brad Soultz, WillScot's Chief Executive Officer, will serve as Chief Executive Officer of the combined company, Kelly Williams, Mobile Mini's President and Chief Executive Officer, will serve as President and Chief Operating Officer of the combined company, Tim Boswell, WillScot's Chief Financial Officer, will serve as Chief Financial Officer of the combined company and Chris Miner, Mobile Mini's General Counsel, will serve as General Counsel of the combined company.

The combined company's board of directors will consist of 11 directors, 6 of which are members from the WillScot Board of Directors and 5 of which are members from the Mobile Mini Board of Directors. Erik Olsson, the Non-Executive Chairman of the Board of Directors of Mobile Mini, will serve as Non-Executive Chairman of, and Gerry Holthaus, Non-Executive Chairman of the Board of Directors at WillScot, will serve as Lead Independent Director of, the board of directors of the combined company.

**Combination Overview and Financial Rationale**

Mobile Mini stockholders will receive 2.4050 shares of WillScot common stock for each share of Mobile Mini common stock held and, based on the closing price of WillScot's Class A common stock on February 28, 2020, the consideration implies a premium of 8% to the closing price of Mobile Mini common stock on the same day. As part of the transaction, TDR Capital will exchange all of its shares of Williams Scotsman Holdings Corp. into approximately 10.6 million shares of WillScot Class A common stock pursuant to the Exchange Agreement dated November 29, 2017 among WillScot, Williams Scotsman Holdings Corp. and affiliates of TDR Capital, and all shares of WillScot's Class B Common Stock will be cancelled for no consideration. Upon the effective time of the merger, the combined company will have a single class of common stock.

This combination is expected to result in an estimated enterprise value for the combined company at announcement of $6.6 billion, $1.7 billion in combined 2019 revenue and ~$650 million in combined 2019 Adjusted EBITDA1, including an estimated $50 million of cost synergies from this transaction. With over $290 million of annual free cash flow2 generation and net leverage of 3.8x3 Adjusted EBITDA1 at close, this transaction demonstrates the combined company's financial strength, significant liquidity, and cash flow generation to provide for ongoing growth and stockholder value creation.

Additionally, the management teams anticipate $50 million in annualized gross pre-tax cost synergies, approximately 80% of which are expected to be realized in the combined company's run-rate within two years of closing. The cost of achieving the synergies is expected to be approximately 150% of the total cost synergies. Significant opportunities for long-term revenue synergy generation are also anticipated, supported by a broad expansion of

service offerings. The transaction is expected to be highly accretive with greater than 10% free cash flow2 per share accretion by end of 2021.

The transaction has been approved by the Boards of Directors of WillScot and Mobile Mini. The transaction is subject to customary closing conditions, including receipt of customary antitrust approval and approval by the stockholders of each company, and is expected to close in third quarter of 2020. Additionally, the transaction also has the support of TDR Capital, which has entered into a customary voting agreement in support of the transaction. TDR Capital will be subject to a contractual lock-up for six months following closing. In the first year following the lock-up, TDR Capital will be prohibited from selling more than 50% of its shares of the combined company.

Morgan Stanley & Co. LLC served as the lead financial advisor to WillScot, Rothschild & Co. served as the financing advisor to WillScot, and Stifel, Nicolaus & Co., Inc. served as the financial advisors to the special committee of WillScot's Board of Directors. BofA Securities Inc., Deutsche Bank Securities Inc., and J.P. Morgan Securities LLC served as additional financial advisors to WillScot. Allen & Overy LLP acted as external legal counsel to WillScot. Barclays Capital Inc. and Goldman Sachs & Co. LLC served as the financial advisors to Mobile Mini, and Davis Polk & Wardwell LLP acted as external legal counsel to Mobile Mini.

* * *

26. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Mobile Mini's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **<u>The Materially Incomplete and Misleading Registration Statement</u>**

27. On April 17, 2020, Mobile Mini and WillScot jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully

review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement indicates that in connection with the rendering of the fairness opinions, management prepared certain non-public financial forecasts (the "Company Projections" and "WillScot Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

29. For the Company Projections and the WillScot Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2024: Adjusted EBITDA, Adjusted EBIT, and Unlevered Free Cash Flows as calculated by each of the Company's and WillScot's financial advisors, but

fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, 'free cash flow' should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

32. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33. With respect to Barclays' *Selected Comparable Company Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Barclays in the analysis.

34. With respect to Barclays' *Mobile Mini Standalone Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of Mobile Mini as of December 31, 2024; (ii) the line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2020 through 2024; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 2.0% to 3.0%; (iv) the inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5%; (v) the net debt of the Company as of December 31, 2019; and (vi) the number of fully diluted outstanding shares of Mobile Mini common stock.

35. With respect to Barclays' *Combined Company Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of the Combined Company as of December 31, 2024; (ii) the line items used to calculate the Combined Company's projected unlevered free cash flows for fiscal years 2020 through 2024; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 2.25% to 3.25%; (iv) the inputs and assumptions underlying the after-tax discount rates ranging from 8.5% to 9.5%; (v) the pro forma net debt of the Combined Company as of December 31, 2019; (vi) the expected phased-in cost synergies in each applicable year and costs of achieving such synergies; and (vii) the estimated number of fully diluted outstanding shares of Combined Company common stock.

36. With respect to Barclays' *Mobile Mini Standalone Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) the basis for applying EV/NTM

Adj. EBITDA multiples of 9.0x to 11.5x earnings per share of Company common stock estimates for each of the fiscal years 2020 to 2022; and (ii) the inputs underlying the discount rate of 12.4%.

37. With respect to Barclays' *Combined Company Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) Barclays' basis for applying EV/NTM Adj. EBITDA multiples of 8.5x to 11.0x earnings per share of Combined Company common stock estimates for each of the fiscal years 2020 to 2022; and (ii) the inputs underlying the discount rate of 11.4%.

38. With respect to Goldman Sachs' *Mobile Mini Standalone Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values of the Company as of December 31, 2024; (ii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 1.00% to 2.00%; (iii) the inputs and assumptions underlying the discount rates ranging from 6.50% to 7.50%; (iv) the number of fully diluted outstanding shares of Company common stock as of December 31, 2019; and (v) the Company's net debt as of December 31, 2019.

39. With respect to Goldman Sachs' *Combined Company Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values of the Combined Company as of December 31, 2024; (ii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 1.25% to 2.25%; (iii) the inputs and assumptions underlying the discount rates ranging from 6.75% to 7.75%; (iv) the expected number of fully diluted outstanding shares of WillScot common stock following the Proposed Transaction; and (v) pro forma net debt as of December 31, 2019.

40.     With respect to Goldman Sachs' *Mobile Mini Standalone Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) Goldman Sachs' basis for applying EV/NTM Adj. EBITDA multiples of 9.0x to 11.5x earnings per share of Company common stock estimates for each of the fiscal years 2020 to 2022; and (ii) the inputs underlying the discount rate of 8.0%.

41.     With respect to Goldman Sachs' *Pro Forma Present Value to be Received per Share of Mobile Mini Common Stock*, the Registration Statement fails to disclose: (i) Goldman Sachs' basis for applying EV/NTM Adj. EBITDA multiples of 8.5x to 11.0x to the estimated Adjusted EBITDA for the Combined Company; and (ii) the inputs underlying the discount rate of 9.0%.

42.     With respect to Goldman's *Illustrative Contribution Analysis*, the Registration Statement fails to disclose: (i) the implied equity contributions of Mobile Mini and WillScot to the pro forma Combined Company; (ii) the number of fully diluted shares of Mobile Mini common stock and WillScot common stock outstanding; and (iii) the inputs underlying the perpetuity growth rate of 1.5% for Mobile Mini and 2.0% for WillScot.

43.     With respect to Goldman Sachs' *Illustrative Pro Forma Merger Analysis*, the Registration Statement fails to disclose: (i) the adjusted earnings per share estimates for Mobile Mini, WillScot, and the Combined Company expected for 2021; and (ii) the assumptions relating to expected run rate cost synergies and transaction fees.

44.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a

fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that

were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

49. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

50. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Mobile Mini within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

directors of Mobile Mini, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Mobile Mini, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Mobile Mini, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

55. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

   E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 20, 2020        **RIGRODSKY & LONG, P.A.**

               By: */s/ Gina M. Serra*

**OF COUNSEL:**         Brian D. Long (#4347)
               Gina M. Serra (#5387)
**WOLF HALDENSTEIN ADLER**   300 Delaware Avenue, Suite 1220
**FREEMAN & HERZ LLP**      Wilmington, DE 19801
Gloria Kui Melwani         Telephone: (302) 295-5310
270 Madison Avenue        Facsimile: (302) 654-7530
New York, NY 10016        Email: bdl@rl-legal.com
Telephone: (212) 545-4600      Email: gms@rl-legal.com
Facsimile: (212) 686-0114
Email: melwani@whafh.com      *Attorneys for Plaintiff*